UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM L. SABATINI,<br><br>                               Plaintiff,<br>v.<br>HONORABLE THOMAS E. PRICE,<br>                               Defendant. | Case No.: 17-cv-1597-AJB-JLB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>(Doc. No. 33) |

     Currently pending before the Court is Plaintiff William L. Sabatini's ("Plaintiff") second attempt to have this Court temporarily restrain the Division of Practitioner Data Banks from disseminating any report regarding him submitted by Mountain View Surgery Center, Redlands, California. (*See generally* Doc. No. 33.) Defendant did not file an opposition to the motion. Pursuant to Civil Local Rule 7.1.d.1, the Court finds the matter suitable for determination on the papers and without oral argument. For the reasons explained more fully below, the Court **DENIES** Plaintiff's motion.

///
///
///
///
///

1

17-cv-1597-AJB-JLB

# BACKGROUND[1]

The National Practitioner Data Bank ("NPDB") was established through Title IV of Public Law 99-660, the Heath Care Quality Improvement Act of 1986. (Doc. No. 18-1 at 9 (*see* 42 U.S.C. § 11133).) The focus of the NPDB is to improve the quality of health care by identifying practitioners who are incompetent or engage in unprofessional conduct; thus it acts as a flagging system to restrict the ability of such practitioners to move from state to state without disclosure or discovery of the "physician's previous damaging or incompetent performance." (Doc. No. 1 at 5; Doc. No. 18-1 at 9 (*see* 42 U.S.C. § 11101).)

Plaintiff is a registered nurse and certified registered nurse anesthetist licensed to practice nursing in California. (Doc. No. 1 at 3; Doc. No. 18-1 at 11.) On January 29, 2013, Mountain View Surgery Center submitted a report to the NPDB concerning Plaintiff. (Doc. No. 18-1 at 11.) The report stated that on January 2, 2013, Plaintiff passed out while monitoring one patient during a procedure and subsequently had to be stopped from trying to administer sedation to a patient who had already been sedated. (*Id.*; Doc. No. 18-2 at 30.) Plaintiff contests this report as well as any other reports submitted by Mountain View. (Doc. No. 1 at 8.)

Beginning in February of 2013, Plaintiff began requesting that Mountain View either remove the report or at a minimum correct it. (Doc. No. 18-1 at 12.) On October 9, 2013, the Department of Health & Human Services ("the Department") noted several errors in Mountain View's NPDB report and as a result requested by letter that Mountain View correct the report. (Doc. No. 18-2 at 29–32.) Despite these corrections, Plaintiff continued to challenge the departmental review of the report and on August 26, 2014, Plaintiff requested reconsideration of the Department's decision. (Doc. No. 18-1 at 13; Doc. No. 18-2 at 53–59.) On December 2, 2014, the Department responded that there was "no basis

---

[1] As the facts of the instant matter have not changed since the Court's January 16, 2018 order, the Court will utilize portions of the background section from that previous order. (Doc. No. 23.)

upon which to conclude that the Report should not have been filed in the NPDB or that the Report is not accurate." (Doc. No. 1 at 20; Doc. No. 18-2 at 59–64.)

Thereafter, on December 7, 2016, Plaintiff again requested amendment by deletion, retraction, or otherwise of Mountain View's NPDB report. (Doc. No. 18-2 at 66–76.) On February 3, 2017, the Department informed Plaintiff that "[t]he NPDB dispute process is inclusive of any rights to review under the Privacy Act" and that Plaintiff had already "exhausted all administrative remedies available to him through [the Department]," thus his request for additional review was denied. (*Id*. at 82.)

On August 9, 2017, Plaintiff filed the instant lawsuit claiming violations of the Privacy Act 5 U.S.C. §§ 552a(g)(1)(A)–(D). (Doc. No. 1.) Shortly thereafter, on August 30, 2017, Plaintiff filed a motion for summary judgment. (Doc. No. 5.) After setting a briefing schedule on the motion, Defendant filed a notice of failure to properly serve the United States. (Doc. No. 7.) On October 5, 2017, the Court issued an order denying Plaintiff's motion for summary judgment without prejudice as premature, vacated the motion hearing date, and requested that Plaintiff review Defendant's notice of failure to serve. (Doc. No. 9.) On November 6, 2017, Defendant filed a motion to dismiss or motion for summary judgment. (Doc. No. 18.) Oral argument was heard on this motion on February 7, 2018, and the motion is currently under submission. (Doc. No. 27.)

On January 12, 2018, while briefing of Defendant's motion to dismiss was still ongoing, Plaintiff filed his first motion for a TRO, which was denied on January 16, 2018. (Doc. Nos. 22, 23.) On February 12, 2018, Plaintiff filed his own motion for summary judgment. (Doc. No. 30.) On February 16, 2018, Plaintiff then filed the instant motion, his second request for a TRO. (Doc. No. 33.)

## **LEGAL STANDARD**

A temporary restraining order may be granted upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition[.]" Fed. R. Civ. P. 65(b)(1)(A). The purpose of such an order, as a form of preliminary injunctive relief, is to preserve the status quo and prevent irreparable

harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974). A request for a TRO is evaluated by the same factors that generally apply to a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). However, a TRO is an "extraordinary remedy" and is "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). Instead, the moving party bears the burden of demonstrating four factors: (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20.

Although a plaintiff must satisfy all four of the requirements set forth in *Winter*, the Ninth Circuit employs a sliding scale whereby "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Accordingly, if the moving party can demonstrate the requisite likelihood of irreparable harm and show that an injunction is in the public interest, a TRO may issue so long as there are serious questions going to the merits and the balance of hardships tips sharply in the moving party's favor. *Id.*

## DISCUSSION

Plaintiff alleges that since the Court's previous order denying his first motion for a TRO, there has been new compelling evidence provided to the Court. (Doc. No. 33 at 1.) Specifically, Plaintiff illustrates that the instant motion is based upon (1) the indisputable admission made by the Mountain View Attorney, John Whalin, that Mountain View was not eligible to make a report concerning Plaintiff to the NPDB; (2) the indisputable admission made by the Mountain View administrator, Mary Lamoureux, that the organization did not have a formally adopted peer review process that provided Plaintiff with rights to a hearing as required by HCQIA for eligibility in the NPDB; (3) the indisputable Mountain View Bylaws that demonstrate that it did not have a "Formal Peer

Review Process" in place to make a report to the NPDB; and (4) Plaintiff's motion for summary judgment and corresponding exhibits. (Doc. No. 33 at 1–2.)

Unfortunately, under the standard proscribed by this circuit, Plaintiff has again failed to demonstrate his likelihood to succeed on the merits. Plaintiff attempts to focus the Court's attention on the foregoing four allegations. However, as the Court reiterated during the motion hearing on Defendant's motion to dismiss, at this stage, Plaintiff must demonstrate that his Privacy Act claim was filed within the statute of limitations. The Court cannot reach the merits of Plaintiff's complaint or motion for summary judgment until this issue has been addressed and decided.

As has already been established in great detail, a suit seeking civil damages under the Privacy Act must be filed:

> <u>within two years from the date on which the cause of action arises</u>, except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section, the action may be brought at any time within two years after discovery by the individual of the misrepresentation.

5 U.S.C. § 552a(g)(5) (emphasis added).

Curiously, the Court's previous order denying Plaintiff's first request for a TRO particularly delineated that the first factor—Plaintiff's likelihood to succeed on the merits—turned on whether there existed any allegations that demonstrated that Plaintiff's Privacy Act claim was filed within the two year statute of limitations or that it fits within an exception. (Doc. No. 23 at 5.) Despite the Court's clear breakdown of the salient issues for Plaintiff's benefit, the current motion solely focuses on the merits of Plaintiff's claims. Thus, Plaintiff has again leaped over the threshold issue of determining whether his Privacy Act claim is time-barred and wishes the Court to join him in making a determination as to how and why Defendant purportedly violated the Privacy Act. However, the Court cannot do so. *See Gray v. Beard*, No. 12-CV-1911-H (RBB), 2013 WL 4782821, at *5 (S.D. Cal.

Sept. 6, 2013) ("The statute of limitations is a threshold issue that must be resolved before the merits of individual claims."). Consequently, as Plaintiff's TRO is silent as to whether his Privacy Act claim is barred or is timely, the Court finds that Plaintiff has not demonstrated a likelihood to succeed on the merits.

As to the second factor, the Court agrees that the immediate and irreparable injury to Plaintiff if this TRO is not granted is severe. This factor weighs even more heavily due to the fact that Plaintiff has been offered a position with the San Diego Veterans Administration hospital, whom according to Plaintiff, is required to and will search the NPDB and discover the report at issue and then retract its offer to Plaintiff. (Doc. No. 33-1 at 3; Doc. No. 33-2 at 1–2.) Thus, this factor weighs in favor of granting Plaintiff's request.

Next, the Court finds that the balance of the competing claims of injury tip in favor of denying the motion for a TRO. *See Keep A Breast Foundation v. Seven Grp.*, No. 3:11-cv-00570-BEN-WMC, 2011 WL 3341474, at *3 (S.D. Cal. May 20, 2011) ("In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.") (citation omitted). As noted, Plaintiff alleges that he has already suffered five years of adverse effects through the dissemination of the NPDB report. (Doc. No. 33-1 at 3.) The Court is sensitive to Plaintiff's claims. However, at this point, they are simply just allegations. The Court has made no finding that the NPDB report is inaccurate or erroneous. Thus, an injunction precluding Defendant from disseminating the report or removing the report would in fact defeat the purpose of the NPDB in allowing hospitals and medical professionals the ability to track and report incompetent or unprofessional employees. Thus, the third factor weighs in favor of denying Plaintiff's request. Finally, the Court does not find that the injunction would advance the public interest in improving the quality of medical care. *See Golden Gate Rest. Ass'n v. City and Cty. of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008) ("In considering the public interest, [the Court] may consider the hardship to all individuals . . . [and is] not limited to parties . . . .").

In sum, after reviewing the equities in this case, the Court concludes that Plaintiff has not met his burden of persuasion in demonstrating the need for the "extraordinary and drastic remedy" of a TRO. *Swanson v. Cleveland Nat'l Forest*, Case No. 06-CV-1560 W (LSP), 2008 WL 11337488, at *2 (S.D. Cal. Sept. 2, 2008).

## CONCLUSION

The bane of Plaintiff's motion lies in the fact that he has not persuaded the Court that his Privacy Act claim is likely to succeed on the merits. Further, most of the remaining factors weigh in favor of denying Plaintiff's request. Consequently, the Court **DENIES** Plaintiff's motion for a temporary restraining order **WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

Dated: February 21, 2018

Hon. Anthony J. Battaglia
United States District Judge