UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM L. SABATINI<br><br>Plaintiff,<br><br>v.<br><br>HONORABLE THOMAS E. PRICE, M.D., Secretary of the United States Department of Health and Human Services,<br><br>Defendant. | Case No.: 17-cv-01597-AJB-JLB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>(Doc. No. 18) |

Pending before the Court is Defendant the Honorable Thomas E. Price's ("Defendant") motion to dismiss, or in the alternative, motion for summary judgment on Plaintiff William Sabatini's ("Plaintiff") Privacy Act lawsuit. (Doc. No. 18.) Plaintiff filed his opposition on January 5, 2018. (Doc. No. 21.) On February 7, 2018, the Court held a motion hearing on the matter. (Doc. No. 27.) As will be explained in more detail below, the Court **GRANTS** Defendant's motion to dismiss.

I. **BACKGROUND**

Plaintiff is a Registered Nurse and Certified Registered Nurse Anesthetist licensed to practice nursing in California. (Doc. No. 1 at 3.) He brings this suit against Defendant

under the Privacy Act of 1974 arguing that the National Practitioner Data Bank ("NPDB") allegedly maintained and disseminated a false report about him. (*Id.* at 1, 8.) Plaintiff highlights that the NPDB collects, stores, and distributes records of malpractice settlements, malpractice awards, and adverse disciplinary actions taken against medical professionals throughout the country. (*Id.* at 5.)

There are currently two reports filed about Plaintiff in the NPDB: (1) a "Title IV Clinical Privileges Action Report" filed on January 11, 2013, by Mountain View Surgery Center, which was reported as a "Voluntary Surrender of Clinical Privilege(s), While Under or to Avoid, Investigation Relating to Professional Competence or Conduct"—Report 5500000081764886; and (2) a November 6, 2013 correction of the preceding report filed by Mountain View—Adverse Action Report 5500000085609213. (*Id.* at 8.)

The January 2013 report at issue revolved around an incident that occurred while Plaintiff was working at Mountain View ("the Report"). (Doc. No. 18-1 at 11; Doc. No. 18-2 at 5–8.) Specifically, the Report states that Plaintiff showed up to work very sleepy, could not focus, acted confused, and made frequent trips to the restroom. (Doc. No. 18-2 at 6.) During one procedure, Plaintiff allegedly fell over and was unresponsive to voice commands; thus he had to be shaken vigorously awake. (*Id.*) Subsequently, Plaintiff arrived at the next procedure where he was purportedly pushed away from a patient to prevent him from administering sedation to the patient when he had previously been informed that the patient had already been sedated. (*Id.*)

Throughout the day, Plaintiff attempted to explain his actions and his slurred speech by stating that he had taken a sleeping pill the night before, had gastrointestinal issues, and that his blood sugar was low. (*Id.*) Plaintiff was also observed with a saline lock in his arm and after he left a restroom, one of the hospital techs states that he found several drops of blood on the floor near a toilet and a syringe that contained what appeared to be propofol. (*Id.*) Plaintiff took a drug test the next day and the results were negative for drugs. (*Id.*) The test apparently did not test for propofol. (*Id.*)

Plaintiff contests any and all reports submitted by Mountain View. (Doc. No. 1 at 8.) In disputing the Report, Plaintiff's statement in opposition submitted to the NPDB states that on the day in question, Plaintiff was suffering flu-like symptoms. (Doc. No. 18-2 at 7.) Thus, during the day, Plaintiff made several trips to the bathroom and also went to his locker to administer IV fluids to himself. (*Id*.) Plaintiff alleges that self-administration of IV fluids is an "accepted practice" at Mountain View. (*Id*.) Further, Plaintiff disputes that he fell over, was unresponsive, and that he had to be shaken awake. (*Id*.) Additionally, Plaintiff states that it is pure speculation that the fluid in the locker room belonged to him. (*Id*.) Finally, Plaintiff argues that he took a 10-panel drug test, as well as underwent a specific drug test for propofol, all of which returned negative results. (*Id*. at 7–8.)

Following these events, Mountain View suspended Plaintiff, Plaintiff offered to relinquish his staff privileges, Mountain View accepted his offer, and then Mountain View submitted its report of the foregoing incident to the NPDB. (Doc. No. 18-1 at 11.) The Report at issue was processed and filed by the NPDB on January 29, 2013. (Doc. No. 18-2 at 5.)

To challenge the report, Plaintiff retained Estelle & Kennedy, APLC who sent the NPDB a letter on February 14, 2013, requesting that the Report be removed or at least corrected. (Doc. No. 18-1 at 12; Doc. No. 18-2 at 10.) Mountain View did not agree to remove or correct the report, thus Plaintiff requested a "Report Review" on March 29, 2013. (Doc. No. 18-1 at 12; Doc. No. 18-2 at 17.)

In response, on October 9, 2013, the Department of Health and Human Services ("DHHS") asked that Mountain View correct the report noting several errors. (Doc. No. 18-2 at 29–32.) Specifically, it found that the "Date Action Was Taken" and "Date Action Became Effective" fields were incorrect and should have been reported as January 11, 2013, and that the description of the act was not factually sufficient. (*Id*. at 31.) The revised report was filed on November 6, 2013. (*Id*. at 34–37.) Thereafter, by letter sent on August 12, 2014, DHHS denied Plaintiff's dispute and held that the corrected report would remain in the NPDB. (*Id*. at 41–50.) Shortly thereafter, on August 26, 2014, Plaintiff requested

reconsideration of DHHS' decision.[1] (*Id*. at 53–57.) On December 2, 2014, DHHS found that there was "no basis upon which to conclude that the Report should not have been filed in the NPDB or that the Report is not accurate[,]" and thus upheld the decision. (*Id*. at 59–64.)

Two years later, on December 7, 2016, Plaintiff and his new counsel, the Law Office of Kenneth Joel Haber, P.C., wrote the NPDB a letter again requesting amendment by retraction or removal of the Report. (*Id*. at 66.) On February 3, 2017, DHHS stated that as Plaintiff had already availed himself of the NPDB dispute resolution process, received a decision, and utilized the reconsideration process and received a decision, Plaintiff had exhausted all of his administrative remedies. (*Id*. at 82.) Thus, his request for additional review was denied. (*Id*.)

On August 9, 2017, Plaintiff filed the instant lawsuit alleging violations of the Privacy Act—5 U.S.C. § 552a(g). (Doc. No. 1.) Specifically, Plaintiff asserts that Defendant permitted an organization, Mountain View, to access DHHS' system of records when it was not authorized to do so. (*Id*. at 29.) Further, Plaintiff alleges that DHHS maintained an inaccurate, irrelevant, and unnecessary report, deprived Plaintiff of his ability to file a statement of agreement, failed to make a reasonable review of Plaintiff's NPDB report under the Privacy Act, and willfully disseminated a report without making sure that it was accurate. (*Id*. at 29–31.)

On August 30, 2017, Plaintiff then filed a motion for summary judgment, which was denied on October 5, 2017, as premature. (Doc. Nos. 5, 9.) On November 6, 2017, Defendant filed the instant motion, its motion to dismiss or motion for summary judgment. (Doc. No. 18.) Shortly thereafter, on November 9, 2017, after receiving a letter from Plaintiff regarding proper service of his complaint, the Court held a status hearing where it

---

[1] At this point, Plaintiff was represented by new counsel, Ziprick & Cramer, LLP. (Doc. No. 18-2 at 53.)

was determined that the issue of service had been resolved. (Doc. No. 20.) The Court then reset the deadlines for Defendant's motion. (*Id.*)

On January 12, 2018, Plaintiff filed a motion for a temporary restraining order, which was denied on January 16, 2018. (Doc. Nos. 22, 23.) The next month, Plaintiff filed his own motion for summary judgment. (Doc. No. 30.) Presently, per the ex parte motion filed by Defendant and granted by the Court, briefing on Plaintiff's motion for summary judgment has been suspended in the interests of judicial efficiency. (Doc. Nos. 34, 36.) On February 16, 2018, Plaintiff filed a second motion for a temporary restraining order, which was again denied on February 21, 2018. (Doc. Nos. 33, 37.)

## II. LEGAL STANDARDS

### A. Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged . . . ." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the

complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

B. <u>Motion for Summary Judgment</u>

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth facts showing a genuine issue of a disputed fact remains. *Celotex Corp.*, 477 U.S. at 330. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**III. DISCUSSION**

As a threshold matter, the Court notes that it will analyze Plaintiff's complaint under the lens of Federal Rule of Civil Procedure 12(b)(6)—a motion to dismiss. At this juncture, little discovery has been made and the various letters referenced in Plaintiff's complaint are attached to both Plaintiff and Defendant's briefs. (*See generally* Doc. Nos. 18, 21.)

Accordingly, a summary judgment standard would be inappropriate. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (holding that documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading does "not convert the motion to dismiss into a motion for summary judgment.") (citation omitted), *overruled on other grounds by Galbraith v. Cty. Of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

A.  Plaintiff's Privacy Act Claim is Barred by its Statute of Limitations[2]

Defendant's argument in its motion is straightforward—Plaintiff's Privacy Act cause of action was filed after its two year statute of limitations had run and is thus time-barred. (*See generally* Doc. No. 18-1.) Plaintiff challenges this contention and brings forth a variety of arguments to assert that his Privacy Act claim was filed in time and thus his lawsuit should continue to move forward. (Doc. No. 21 at 8–13.)

"The Privacy Act was designed to protect the privacy of individuals through regulation of the collection, maintenance, use, and dissemination of information by federal agencies." *Rouse v. U.S. Dep't of State*, 567 F.3d 408, 413 (9th Cir. 2009) (citation and internal quotation marks omitted). It provides agencies with "detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements" of the Act. *Doe v. Chao*, 540 U.S. 614, 618 (2004).

The Privacy Act requires plaintiffs to bring suit:

> within two years from the date on which the cause of action

---

[2] The Court finds it noteworthy to explicate that despite Plaintiff's steadfast belief that his exhibits conclusively establish that Defendant has violated the Privacy Act, the Court cannot turn to the merits of Plaintiff's claim without first addressing whether Plaintiff filed his complaint within the applicable statute of limitations. *See Shimp v. Paramo*, No. 12cv01537 AJB (RBB), 2013 WL 526053, at *9 (S.D. Cal. Feb. 11, 2013) ("The statute of limitations is a threshold issue that must be resolved before the merits of individual claims.") (citing *White v. Klitzkie*, 281 F.3d 920, 921–22 (9th Cir. 2002). Thus, for purposes of this motion, the Court will not take into consideration the second half of Plaintiff's opposition brief that focuses solely on the merits of his complaint.

> arises, except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section, the action may be brought at any time within two years after discovery by the individual of the misrepresentation.

5 U.S.C. § 552a(g)(5). A cause of action arises under the Privacy Act when the plaintiff "knows or has reason to know of the alleged violation." *Rose v. United States*, 905 F.2d 1257, 1259 (9th Cir. 1990). The majority of our sister circuits have also reached the same conclusion. *E.g.*, *Doe v. Nat'l Sec. Agency*, No. 97-2650, 1998 WL 743665, at *1 (4th Cir. 1998); *Tijerina v. Walters*, 821 F.2d 789, 797–98 (D.C. Cir. 1987); *Bergman v. United States*, 751 F.2d 314, 316 (10th Cir. 1984); *Diliberti v. United States*, 817 F.2d 1259, 1262 (7th Cir. 1987). Moreover, a new cause of action "does not arise each time an adverse determination is made based on the allegedly erroneous records." *Ramirez v. Dep't of Justice*, 594 F. Supp. 2d 58, 62 (D.C. Cir. 2009); *see also Oja v. United States Army Corps. of Eng'rs*, 440 F.3d 1122, 1133 (9th Cir. 2006) ("Application of the single publication rule to Internet publication is not inconsistent with the Privacy Act's strictures.").

Based off of the pleadings, the Court finds that absent any exceptions, Plaintiff's Privacy Act claim was filed after the statute of limitations had run. Plaintiff filed his complaint with this Court on August 9, 2017. (Doc. No. 1.) However, Plaintiff's initial request for removal or amendment of his report with the NPDB was made on February 14, 2013. (Doc. No. 18-2 at 10.) Thus, it is uncontroverted that Plaintiff knew, and informed others, including his counsel at that time, of the purported erroneous statements in his NPDB report in 2013. Thus, as Plaintiff's Privacy Act statute of limitations expired on February 14, 2015, and his complaint was filed nearly two years later, his claim is time-barred. *See Ricks v. United States*, No. 17-cv-1016-H-BGS, 2018 WL 454455, at *5 (S.D. Cal. Jan. 17, 2018) (holding that as the plaintiff became aware of the VA's disclosure of his medical and private information at some point in January 2010, his November 2017

lawsuit fell outside of the Privacy Act's two-year statute of limitations); *see also Johnson v. U.S. Air Force*, No. CV F 09-0281 LJO DLB, 2010 WL 1780231, at *7 (E.D. Cal. Apr. 30, 2010) (finding the plaintiff's Privacy Act cause of action time-barred as she claimed that her medical records were disclosed on June 26, 2006, but did not file her lawsuit until February 13, 2009); *Green v. Westphal*, 94 F. App'x 902, 904 (3rd Cir. 2004) (holding that the plaintiff knew of the alleged error in his record in 1981 "when he first sought to have his discharge upgraded from undesirable to honorable" and thus his complaint filed in 2001 was barred by the Privacy Act's statute of limitations).

In opposition, Plaintiff advances a myriad of points: (1) that the statute of limitations on his claim began on February 3, 2017, as this was the date that his request to amend was denied, as well as the date that he first gained knowledge that he had rights under the Privacy Act; (2) there is evidence that the NPDB materially and willfully misrepresented information to him; (3) that the NPDB actively conceals the fact that subjects of reports have rights under the Privacy Act; and (4) that the NPDB has a duty to inform subjects of reports that they can file a lawsuit in the district court under the Privacy Act. (Doc. No. 21 at 9–13.)

### i. *Plaintiff Mischaracterizes the Privacy Act's Statute of Limitations*

Plaintiff's opposition brief strongly promotes the belief that the statute of limitations on his claim did not begin until he knew that the Privacy Act existed. (*Id.* at 9.) Regrettably, this preceding assertion is based off of an erroneous misconception and mischaracterization of the law. As already specified "[t]he Privacy Act's statute of limitations commences when the person knows or has reason to know of the <u>alleged violation</u>. Because the accrual of the statute of limitations in part turns on what a reasonable person should have known. . . ." *Oja*, 440 F.3d at 1135 (emphasis added) (citation omitted); *see also Englerius v. Veterans Admin.*, 837 F.2d 895, 898 (9th Cir. 1988) ("We join the Seventh, Tenth and District of Columbia Circuits in holding that a cause of action under the Privacy Act does not arise and the statute of limitations does not begin to run until the plaintiff knows or has reason to know of the alleged violation.").

Thus, the critical issue is when Plaintiff had reason to know of the alleged violation—i.e., in this case when Plaintiff had reason to know that a purported flawed report about him was being maintained by the NPDB. In 2013, Plaintiff, who was represented by counsel at the time, sent a letter to DHHS asking for his NPDB record to be amended or corrected as it was based off of faulty assumptions and blatant inaccuracies. (Doc. No. 18-2 at 10.) It is thus irrefutable that Plaintiff had knowledge of the alleged violation on or even before February 14, 2013. Thus, his two year statute of limitations ran on February 14, 2015, making his August 2017 complaint time-barred. *See Duncan v. U.S. E.P.A.*, 89 F. App'x 635, 636 (9th Cir. 2004) (concluding that as the plaintiff wrote a letter on July 28, 1997, in regards to the alleged erroneous disclosure, the plaintiff's January 2000 complaint was outside of the limitations period). Consequently, to the extent that Plaintiff argues that the statute of limitations on his Privacy Act claim only began when he found out that the Privacy Act existed, this theory is groundless.

> ii. *Plaintiff's Use of Englerius v. Veterans Administration Does Not Make His Privacy Act Claim Timely*

As this instant motion has been pending, Plaintiff has filed two supplemental briefs pointing the Court to a Ninth Circuit Court of Appeals case *Englerius v. Veterans Admin.*, 837 F.2d 895 (9th Cir. 1988). (Doc. Nos. 26, 32.) Regrettably, the Court finds that *Englerius* does not support Plaintiff's various arguments, but in fact further confirms Defendant's position.

In *Englerius*, the plaintiff sought to have an "embellished" report that was placed in his file corrected. *Englerius*, 837 F.2d at 896. On April 18, 1981, the plaintiff wrote to the hospital's chaplain and requested that the report be removed from his file. *Id*. This letter was then forwarded to the Seattle VA Medical Center Director's Office on April 20, 1981, where it was treated as a request for amendment of records. *Id*. In December of 1983, the plaintiff filed suit against the VA and the hospital under the Privacy Act. *Id*. The district court dismissed the claim as time-barred. *Id*. Ultimately, in reversing and remanding this case, the Ninth Circuit Court of Appeals held that "a cause of action under the Privacy Act

10

17-cv-01597-AJB-JLB

does not arise and the statute of limitations does not begin to run until the plaintiff knows or has reason to know of the alleged violation."[3] *Id*. at 898.

Plaintiff focuses solely on the *Englerius* court's statement that "the statute of limitations for a Privacy Act claim, 5 U.S.C. § 552a(g)(5), commences at the time that a person knows or has reason to know that the request has been denied." *Id*. at 897 (emphasis added). In other words, for an amendment claim, the statute of limitations begins when the agency denies the request to amend. Plaintiff asserts that Defendant denied his request to amend his report on February 3, 2017. (Doc. No. 32 at 4.) Thus, per the holding in *Englerius*, Plaintiff's statute of limitations ends on February 3, 2019.[4]

Despite the arguments advanced by Plaintiff, the Court disagrees. First, the Court finds that the date on which Plaintiff should have known that his amendment request was being denied is August 12, 2014—the date DHHS denied his first request for amendment or deletion. (Doc. No. 18-2 at 41.) Thus, Plaintiff's statute of limitations on his Privacy Act claim ran on August 12, 2016; Plaintiff's complaint with this Court was filed a year later. (Doc. No. 1.)

The Court notes that Plaintiff challenges this contention as he argues that his 2013 and 2014 amendment requests were not made under the Privacy Act, but were only requested pursuant to the NPDB's "Secretarial Review" process. (Doc. No. 32 at 4.) However, based off of the letters in the record, there is no evidence to demonstrate that Plaintiff's initial requests were not reviewed under the Privacy Act.[5] In fact, in direct

---

[3] The Court notes that the district court was reversed based on the fact that it had "dismissed the complaint without considering any factual matters[.]" *Englerius*, 837 F.2d at 897. Thus, the Ninth Circuit assumed that the district court determined that the limitations period on the plaintiff's Privacy Act claim began two years after a person requests amendment or correction of a record to the agency—an assumption made in error. *Id*. (emphasis added).

[4] The Privacy Act has four specific subsections, one of which states that an individual may bring a civil action when an agency makes a determination "not to amend an individual's record in accordance with his [or her] request[.]" 5 U.S.C. § 552a(g)(1)(A).

[5] Plaintiff employs *Doe v. Thompson*, 332 F. Supp. 2d 124 (D.C. Cir. 2004), to further support his argument that his requests made in 2013 and 2014 could not have been made

contrast to Plaintiff's conclusory allegations, the DHHS' December 3, 2017 letter clearly stated that Plaintiff's previous amendment requests were "performed in accordance with the Privacy Act . . . ." (Doc. No. 18-2 at 82.) Accordingly, *Englerius* is inapplicable to the present matter and Plaintiff's Privacy Act claim is still untimely.

### iii. Plaintiff is Not Entitled to Equitable Tolling

Next, from what the Court can discern, Plaintiff also attempts to argue that he is entitled to equitable tolling. (Doc. No. 21 at 9–10.) "The equitable tolling of statutes of limitations is a judicially created, nonstatutory doctrine." *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 99 (2008). It is "designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied." *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal. App. 3d 1, 38 (1989). Where

---

under the Privacy Act as the NPDB procedures provide less protections than the Privacy Act. (Doc. No. 21 at 11.) Plaintiff is correct that in *Doe*, the court clearly delineated that:

> [I]t is readily apparent that the NPDB procedures provide less protection than the procedures required by the Privacy Act. For example, the Privacy Act requires that "prior to disseminating any record about an individual to any person other than an agency …[, the agency must] make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes." 5 U.S.C. § 552a(e)(6). On the other hand, the NPDB regulations only require the DHHS to place a "disputed" notice on any report if information it contains is in dispute, and does not require a "reasonable" check for, among other requirements, accuracy prior to its dissemination. 45 C.F.R. 60.14.

*Doe*, 332 F. Supp. 2d at 130. However, *Doe* is factually inapposite as the plaintiff and the defendant were contesting whether the Privacy Act or the HCQIA applied to the request. *Id*. at 129–30. Moreover, the ultimate holding in *Doe* was that the DHHS "must adhere to the requirements of the Privacy Act when considering a dispute to a record in the NPDB." *Id*. at 131. Here, Defendant stated that Plaintiff's requests for amendment were completed pursuant to the Privacy Act and Plaintiff has failed to persuasively demonstrate anything to contradict Defendant's statement. (Doc. No. 18-2 at 82.)

applicable, the doctrine will "suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370 (2003).

Plaintiff asserts that he has pursued his rights with due diligence and that per *Boyd v. United States*, 932 F. Supp. 2d 830 (S.D. Oh. 2013), he is entitled to equitable relief from the statute of limitations. (Doc. No. 21 at 9–10.) To begin with, the Court first notes that it agrees that Plaintiff was actively pursuing his rights in 2013 and 2014. However, after his request for reconsideration was denied in 2014, Plaintiff did not pursue any further legal remedies until he sent the NPDB his December 7, 2016 letter. (Doc. No. 18-2 at 66.) Consequently, this two year lull does not give the Court the impression that Plaintiff was pursuing his rights diligently or that some extraordinary circumstance stood in his way to entitle him to equitable tolling. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).[6]

Further, to the extent that Plaintiff cites to *Boyd* to argue that he is entitled to equitable relief from the filing deadline, Plaintiff's assertions are unfounded. The court in *Boyd* expounded a five factor test to determine whether a plaintiff is entitled to equitable tolling. *See Boyd*, 932 F. Supp. 2d at 838. However, as *Boyd* is a sixth circuit case, its analysis and ultimate conclusion is irrelevant to the matter at hand and the case as a whole is not dispositive. Moreover, the Ninth Circuit uses a different standard to determine if equitable tolling is applicable. *See Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) ("To receive equitable tolling, a petitioner bears the burden of showing (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.") (citation and internal quotation marks omitted).

Moreover, despite Plaintiff's aggressive posture that he is entitled to equitable tolling

---

[6] During the motion hearing, Plaintiff attempted to argue that every lawyer he employed was either uneducated as to the NPDB dispute resolution process or failed to discover his rights under the Privacy Act. As these arguments are still wholly undeveloped and unsupported, the Court will not take them into consideration in determining whether equitable tolling applies to Plaintiff's claim.

because he had no knowledge of the existence of the Privacy Act prior to 2016, this Court as well as other circuits have held that a "pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling."[7] *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006); *see also Waldron-Ramsey*, 556 F.3d at 1013 n.4 ("While [the plaintiff's] pro se status is relevant, we have held that a pro se petitioner's confusion or ignorance of the law is not, itself, a circumstance warranting equitable tolling.").

Consequently, despite Plaintiff's argument that he has diligently pursued his legal remedies, the Court disagrees and finds that he is currently not entitled to the extraordinary remedy of equitable tolling. *See Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) ("We have made clear, however, that equitable tolling is unavailable in most cases, and is appropriate only if *extraordinary* circumstances beyond an [individual's] control make it impossible to file a petition on time.") (citation and internal quotation marks omitted).

### iv. The NPDB Had No Duty to Inform Plaintiff of His Rights Under the Privacy Act

Plaintiff, both in his opposition brief and at the motion hearing, ardently argues that the NPDB had an active duty to inform him that he had rights under the Privacy Act. (Doc. No. 21 at 11–12.) Regrettably, this assertion is entirely unsubstantiated.

To support his position that the NPDB had the duty stated above, Plaintiff points the Court to 5 U.S.C. § 552a(g)(1). (Doc. No. 32 at 1–2.) In pertinent part, Section 552a(g)(1) states that:

> Whenever any agency (A) makes a determination . . . not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection; . . . (C) fails to maintain any record concerning any individual with

---

[7] The Court gets the sense that Plaintiff believes that it is fundamentally unfair that his claims are subject to a statute of limitations. However, the Court illustrates that these limitations on claims "relieve courts of the burden of adjudicating stale claims . . . ." *Albillo-De Leon v. Gonzales*, 410 F.3d 1090, 1095 (9th Cir. 2005) (citation omitted).

> such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications . . . <u>the individual may bring a civil action against the agency</u> . . . .

5 U.S.C. § 552a(g)(1). Looking to the unambiguous words present in the statute, it should be clear to Plaintiff that it only informs an individual of his or her right to bring a civil action. There is absolutely no language that indicates that the NPDB is required by law to inform an individual of all the civil remedies they may take to amend or correct their report.

Further, as a final lifeline, Plaintiff provided the Court with two exhibits at the motion hearing to demonstrate that the NPDB actively conceals the fact that subjects of reports can file Privacy Act claims: (1) a portion of the NPDB guidebook titled "Dispute Process" and (2) a screen capture of the Health Resources & Services Administration System of Record Notice 09-15-0054. (Doc. No. 28.) Specifically, Plaintiff highlights that the NPDB guidebook is completely silent as to an individual's rights under the Privacy Act. Thus, according to Plaintiff, the NPDB creates a situation or in fact, there exists some sort of conspiracy to prevent subjects of reports from filing their Privacy Act claims on time. Unfortunately, once more, the Court finds that Plaintiff has muddied the waters and has unsuccessfully attempted to support his assertion that the NPDB intentionally tried to prevent him from filing his Privacy Act claim.

The Court clarifies that it agrees that the section of the NPDB guidebook provided by Plaintiff does not mention the Privacy Act. However, logically, the NPDB guidebook, specific to NPDB procedures, does not need to list off all the legal avenues subjects of a report may take in contesting an NPDB report. If we were to follow Plaintiff's reasoning, then any company under threat of suit would have to list off all the possible causes of action against it.

The Court is sensitive to the hardships that come with navigating the law. However, though Plaintiff believes that the NPDB should have a moral or ethical duty to inform him of his rights under the Privacy Act, as currently pled, Plaintiff has not sufficiently alleged

15

17-cv-01597-AJB-JLB

that a legal duty exists. Thus, Plaintiff's arguments are immaterial.

### v. *Plaintiff's Privacy Act Claim Does Not Fall Within the Exception to its Statute of Limitations*

Finally, the Court turns to the exception to the Privacy Act's statute of limitation that states that if the agency willfully misrepresents information material to its liability then the two years begins to run when the plaintiff discovers the misrepresentation. *See* 5 U.S.C. § 552a(g)(5). Here, in arguing that the NPDB has willfully misrepresented information, Plaintiff only relies on speculative and self-serving assumptions. (Doc. No. 21 at 9–10.)

Plaintiff's opposition brief specifically points to the DHHS' February 3, 2017 letter denying Plaintiff's Privacy Act request.[8] (*Id.*) Explicitly, Plaintiff takes issue with the statements that Plaintiff "availed himself of the NPDB dispute resolution process," that he "utilized the reconsideration process," that the review of Plaintiff's report was performed in accordance with the Privacy Act, and that the "NPDB dispute process is inclusive of any rights to review under the Privacy Act." (*Id.*) Plaintiff argues that these statements are "inaccurate and disingenuous" and that they demonstrate that the NPDB took "active steps" to prevent him from filing his Privacy Act claim on time. (*Id.*)

In general, all of the foregoing assumptions are clearly unfounded. Plaintiff simply makes barebones conclusions without providing the Court any evidence to prove that the review was not proper under the Privacy Act or that he had not exhausted all of his administrative remedies. Moreover, Plaintiff has not clearly demonstrated how these alleged misrepresentations were material to the NPDB's liability under the Privacy Act. *See Oja*, 440 F.3d at 1136 ("Nowhere in [the plaintiff's] argument has [he] asserted that [the defendant] materially or willfully misrepresented information that it was required to disclose to him and that this information was material to [the plaintiff] bringing his Privacy

---

[8] Plaintiff asks the Court to look to Exhibit 3. (Doc. No. 21 at 9.) However, as exhibit 3 is the results of Plaintiff's drug tests, the Court believes that Plaintiff meant to refer the Court to exhibit 4 attached to his opposition brief.

Act claim[.]"). Accordingly, Plaintiff has not alleged any viable assertions to demonstrate that his Privacy Act claim falls within the exception to the two-year statute of limitations.

## IV. CONCLUSION

Conclusory and baseless contentions do not constitute proper allegations. Presently, Plaintiff's opposition brief fails to support his various and at times convoluted theories to demonstrate that his Privacy Act claim is not time-barred. The Court is sensitive to the stress and anxiety that Plaintiff must be under in desiring to remove the NPDB report about him. However, Plaintiff's arguments at this point amount to nothing more than his own musings. Beyond this basic issue, from what the Court can determine, Plaintiff seems to allege that the NPDB and its employees actively colluded together to prevent Plaintiff from filing a Privacy Act claim. It is unmistakable that these contentions are completely unsupported. Accordingly, the Court concludes that the statute of limitations on Plaintiff's Privacy Act claim has run and thus Defendant's motion to dismiss is **GRANTED**.

At this point, the Court will grant Plaintiff one last chance to demonstrate that he is entitled to equitable tolling or to demonstrate that his Privacy Act claim is subject to the exception to the statute of limitations. Plaintiff is to limit his brief to **fifteen (15) pages** with limited exhibits and must be filed within **fourteen (14) days** from the date of this Order. Defendant may file a response to the brief **seven (7) days** after it is filed with the Court.

**IT IS SO ORDERED**.

Dated: March 6, 2018

Hon. Anthony J. Battaglia
United States District Judge